UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., *Plaintiff*, v. LAXMI LODGING, INC., et al., *Defendants*. | Civil Action No. 17-2803 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Days Inn Worldwide, Inc.'s ("DIW") motion for default judgment against Defendants Laxmi Lodging, Inc. ("Laxmi Lodging"), Bhupendra Patel ("B. Patel"), Pravina Patel ("P. Patel"), Amrat Patel (A. Patel"), Hasmuk Patel ("H. Patel"), and Sunita Patel ("S. Patel") (collectively, "the Guarantors," and, together with Laxmi Lodgings, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 10. For the reasons set forth herein, the motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1, ECF No. 1. DIW is a franchisor of guest lodging facilities. Id. ¶¶ 9-10. Laxmi Lodgings is a corporation organized and existing under the laws of Texas, where it also has its principal place of business. Id. ¶ 2. B. Patel, P. Patel, A. Patel, H. Patel, and S. Patel are each a shareholder of Laxmi Lodgings and each a citizen of the State of Texas. Id. ¶¶ 3-7.

On December 30, 2013, DIW entered into the Franchise Agreement with Laxmi Lodgings

1

for the operation of a 40-room Days Inn guest lodging facility located at 905 Highway 79 North, Henderson, Texas 75652 (the "Facility"). Id. ¶ 12. Laxmi Lodgings was obligated to operate the Facility for a 15-year term. Id. ¶ 13. In addition, Laxmi Lodgings agreed to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees"); to accurately report its monthly gross revenue for the purpose of determining the amount of royalties and other Recurring Fees due to DIW; and to maintain accurate financial information and permit DIW to examine and audit its books and records. Id. ¶¶ 14, 16-17. For all past due amounts payable to DIW, Laxmi agreed to pay interest at the rate of 1.5% per month or the maximum rate permitted by law, whichever is less. Id. ¶ 15. Pursuant to Section 17.4 of the Agreement, Laxmi also agreed that in the event of litigation, the non-prevailing party would pay all legal costs and expenses, including reasonable attorneys' fees. Id. ¶ 18.

Effective as of the date of the Franchise Agreement, the Guarantors each provided DIW with a guaranty of Laxmi Lodging's obligations under the Franchise Agreement. Id. ¶ 19. Pursuant to the Guaranty, the Guarantors each agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Laxmi Lodgings] to perform, each unpaid or unperformed obligation of [Laxmi Lodgings] under the [Franchise] Agreement." Id. ¶ 20. In addition, the Guarantors each agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or Franchise Agreement. Id. ¶ 22.

By letter dated November 4, 2014, DIW notified Laxmi Lodgings that (1) Laxmi Lodgings was in breach of the Franchise Agreement because it owed DIW approximately $47,286.68 in outstanding Recurring Fees, (2) it had 10 days within which to cure this monetary default, and (3)

if the default was not cured, then the Agreement might be subject to termination. Id. ¶ 23. By letter dated February 10, 2015, DIW notified Laxmi Lodgings that (1) Laxmi Lodgings remained in breach of the Franchise Agreement because it owed DIW approximately $59,738.31 in outstanding Recurring Fees, (2) it had an additional 10 days within which to cure this continuing monetary default, and (3) if the default was not cured, then the Agreement might be subject to termination. Id. ¶ 24. By letter dated April 15, 2015, DIW notified Laxmi Lodgings that (1) Laxmi Lodgings remained in breach of the Franchise Agreement because it owed DIW approximately $57,299.24 in outstanding Recurring Fees, (2) it had an additional 10 days within which to cure this continuing monetary default, and (3) if the default was not cured, then the Agreement might be subject to termination. Id. ¶ 25. By letter dated August 28, 2015, DIW notified Laxmi Lodgings that (1) Laxmi Lodgings remained in breach of the Franchise Agreement because it owed DIW approximately $80,822.09 in outstanding Recurring Fees, (2) it had an additional 10 days within which to cure this continuing monetary default, and (3) if the default was not cured, then the Agreement might be subject to termination. Id. ¶ 26. By letter dated December 7, 2015, DIW notified Laxmi Lodgings that (1) Laxmi Lodgings remained in breach of the Franchise Agreement because it owed DIW approximately $99,751.60 in outstanding Recurring Fees, (2) it had an additional 10 days within which to cure this continuing monetary default, and (3) if the default was not cured, then the Agreement might be subject to termination. Id. ¶ 27. By letter dated June 3, 2016, DIW notified Laxmi Lodgings that (1) Laxmi Lodgings remained in breach of the Franchise Agreement because it owed DIW approximately $115,026.44 in outstanding Recurring Fees, (2) it had an additional 10 days within which to cure this continuing monetary default, and (3) if the default was not cured, then the Agreement might be subject to termination. Id. ¶ 28.

On May 24, 2016, the parties executed a confidential settlement agreement whereby

Defendants agreed to pay a certain sum over various installments. Id. ¶ 29. However, Defendants have failed to make settlement payments in accordance with the terms of that settlement agreement. Id. ¶ 32. DIW alleges that the parties also executed a consent judgment to secure payments due under the settlement agreement, and that Defendants have failed to make those payments as well. Id. ¶¶ 30-32.

On April 25, 2017, DIW initiated a Complaint in this action against the Defendants. ECF No. 1. The Complaint contains five counts against Defendants: (1) an accounting claim for Laxmi Lodging's failure to permit DIW to examine its financial records; (2) a breach of contract claim for Laxmi Lodging's failure to remit certain of the agreed Recurring Fees; (3) an unjust enrichment claim for Laxmi Lodging's failure to remit certain of the Recurring Fees; and (4) a claim against Guarantors under the Guaranty for Guarantors' failure to make any payments or perform or cause Laxmi Lodging to perform each obligation required under the Agreement; and (5) a claim for entry of a settlement agreement by which DIW alleges Defendants agreed to make certain payments in lieu of the Recurring Fees that are the basis of Counts Two, Three, and Four. Compl. ¶¶ 35-55.

On June 9, 2017, H. Patel and S. Patel were served with the Complaint. ECF No. 4. On June 15, 2017, Laxmi Lodging, B. Patel, and P. Patel were served with the Complaint. ECF No. 5. On July 10, 2017, A. Patel was served with the Complaint. ECF No. 6. On August 16, 2017, DIW requested the entry of default against all Defendants, and the clerk entered default on August 21, 2017. ECF No. 9. On September 22, 2017, DIW moved for default judgment against Defendants and requested Recurring Fees in the amount of $153,115.87, inclusive of interest at the rate of 1.5% per month per Section 7.3 of the Franchise Agreement. ECF No. 10. In support of its motion, DIW attaches an Affidavit from Suzanne Fenimore, Senior Director of Contracts Compliance at DIW, containing an explanation of the figures DIW seeks and documents to support

4

DIW's calculations. ECF 10.3 ("Fenimore Aff.").

## II. LEGAL STANDARD

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In addition, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## III. ANALYSIS

### A. Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendants. This Court has subject matter jurisdiction by virtue of diversity jurisdiction under 28 U.S.C. § 1332 because DIW and the Defendants are citizens of different states and there

is an amount in controversy exceeding $75,000. See Compl. ¶¶ 1-8. This Court has personal jurisdiction over Laxmi Lodging pursuant to Section 17.6.3 of the Franchise Agreement, and over the Guarantors pursuant to the terms of the Guaranty, which provides that they are each personally bound by Section 17 of the Franchise Agreement. Id. ¶¶ 9-10. Section 17.6.3 of the Franchise Agreement provides that Defendants consent to and waivetrav objection to "the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between [DIW] and [Defendants]." Id. ¶ 9. DIW also provided the Court with proof of personal service on Defendants. See Executed Summonses, ECF Nos. 4-6; Couch Cert. ¶ 5-7, ECF No. 10.2.

### B. Liability

As Defendants have not filed an Answer or otherwise responded to the Complaint, the Court must accept the truthfulness of DIW's well pled allegations as to liability. Comdyne I, 908 F.2d at 1149. The Court is satisfied that DIW has adequately pled claims against Defendants for breach of contract.

To state a claim for breach of contract in New Jersey, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) that Defendant breached the contract; and (3) that Plaintiff suffered damages due to the breach. AT & T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1999). DIW has alleged that: (1) there was a contractual relationship between DIW and Defendants based on the Franchise Agreement, see Compl. ¶ 12; (2) Laxmi Lodgings breached the Agreement by failing to make required payments of Recurring Fees, see id. ¶¶ 22-28, 39-42; (3) the Guarantors breached the Guaranty when they each failed to fulfill Laxmi Lodging's obligations under the Franchise Agreement, see id. ¶¶ 48-50; Fenimore Aff., Ex.

B; and (4) DIW suffered damages, see Compl. ¶¶ 40-41, 49-50; Fenimore Aff. ¶¶ 12-18. DIW has sufficiently alleged a breach of contract by Defendants.[1]

### C. Appropriateness of Default Judgment

Next, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. The Court concludes that in the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense. See Ramada, 2012 WL 924385, at *5. Second, the Court finds that DIW will suffer prejudice absent entry of default judgment as it would have no other means of obtaining relief. Finally, the Court finds that Defendants acted culpably as they have been served with the Complaint, and as each of the Guarantors is not an infant or otherwise incompetent, and is not presently engaged in military service. See Couch Cert. ¶¶ 13-17; Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

### D. Monetary Damages

DIW has requested a default judgment in the amount of $153,115.87. Fenimore Aff. ¶ 25. This amount is calculated as of September 19, 2017 and consists of Recurring Fees in the amount of $153,115.87, inclusive of interest in the amount of 1.5% per month. Fenimore Aff. ¶ 24; see Fenimore Aff., Ex. J. In support of its claims for damages, DIW submitted an itemized statement

---

[1] As the Court holds that Plaintiff has established a valid claim for breach of contract and is entitled to its requested damages under that claim, the Court need not address Plaintiff's alternative theories of liability.

setting forth the amounts of Recurring Fees due and owed.  See Fenimore Aff., Ex. J.  This evidence satisfies the legal standard for damages.  See, e.g., Travelodge Hotels, Inc. v. JSK Hospitality, LLC, No. 16-4982, 2017 WL 3208348, at *4 (D.N.J. Jul. 28, 2017) (holding that similar evidence of damages was sufficient for the entry of default judgment); Travelodge Hotels, Inc. v. Seaside Hosp., LLC, No. 15-5595, 2016 WL 5899281, at *5 (D.N.J. Oct. 6, 2016) (same); Travelodge Hotels, Inc. v. CPK, INC., No. 13-4796, 2015 WL 5770508, at *4 (D.N.J. Sept. 30, 2015) (same).[2]

## IV.  CONCLUSION

For the reasons set forth herein, DIW's motion for default judgment, ECF No. 10, is **GRANTED**.  Judgment shall be entered against Defendants for $153,115.87.  An appropriate Order accompanies this Opinion.

**Dated: April 10, 2018**

>  */s Madeline Cox Arleo*
> **Hon. Madeline Cox Arleo**
> **United States District Judge**

---

[2] The Court notes that Plaintiff does not appear to seek attorneys' fees or costs.  See Fenimore Aff. ¶¶ 25-26.